## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAFFI KHATCHADOURIAN,

        *Plaintiff*,

   v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

        *Defendants*.

Civil Action No. 22-03734 (AHA)

### <u>Memorandum Opinion and Order</u>

Journalist Raffi Khatchadourian sued the Department of Justice and one of its component agencies, the Federal Bureau of Investigation, alleging they violated the Freedom of Information Act ("FOIA") by failing to release records related to James Ralph Rose, Jr., who was convicted of explosives trafficking about 45 years ago and died about 30 years ago. The parties each move for summary judgment as to whether the government properly withheld certain types of information. For the reasons below, the Court grants each party's motion in part and denies each party's motion in part.

### I.      Background

In October 2022, Raffi Khatchadourian sent a FOIA request to the FBI seeking "all records mentioning or referring to" James Ralph Rose, Jr. ECF No. 28-2 at 5. Rose was convicted in 1979 for his involvement in a scheme to use explosives "in an underwater demolition operation against whaling vessels in Chile." *Id.* at 6. Khatchadourian's request included proof that Rose and several individuals connected to him are deceased, as well as privacy waivers from other individuals. *Id.*

at 8. Within days, the FBI responded saying it was "unable to identify" any responsive records. ECF No. 28-7 at 4.

Khatchadourian sued the Department of Justice and FBI for failure to comply with FOIA. In response to the suit, the government made 13 productions, releasing 19 pages in full and redacting the remaining pages in part or in full. ECF No. 28-2 at 5. The parties then filed cross-motions for summary judgment. After the parties filed their cross-motions, they narrowed the issues in dispute and the government reprocessed records to correct earlier redactions while maintaining most of its withholdings. ECF No. 39-2 at 12; ECF No. 40-1 at 1. The Court considers the issues that remain in dispute below.[1]

## II.    Discussion

FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Those exemptions "must be narrowly construed." *Id.* (quotation marks and citation omitted). "The burden is on the agency to justify withholding the requested documents," and a district court must "determine de novo whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). The government "is entitled to summary judgment if it can demonstrate that there are no material facts in dispute as to the adequacy of its search for or production of responsive records." *Abramyan v. U.S. Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 62 (D.D.C. 2013) (citing *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 849 F.

---

[1]    The parties no longer dispute the adequacy of the government's search or the government's withholdings under FOIA exemption 3, exemption 5, exemptions 6 and 7(C) as to the "identities of personnel from foreign government agencies"; exemption 7(D) as to "confidential source symbol and file numbers"; exemption 7(E) as to "investigative file numbers and information about the witness security program"; and exemption 7(F) as to "the name of an individual in witness protection." ECF No. 28-1 at 3 n.2; *see* ECF No. 35; ECF No. 39-2 ¶ 35 n.4; ECF No. 40 at 2 n.1.

Supp. 2d 13, 21–22 (D.D.C. 2012)). Agencies can rely on affidavits and declarations to meet their burden "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). For most FOIA exemptions, including the two in dispute here, the government also "bears the burden of showing that it 'reasonably foresees that disclosure would harm an interest protected by an exemption.'" *Leopold v. U.S. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

## A.  The Government Has Not Satisfied Its Burden As To Exemptions 6 and 7(C)

The parties dispute whether the government has satisfied its burden as to withholdings under FOIA exemptions 6 and 7. FOIA's sixth exemption authorizes withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) authorizes withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). The latter exemption is more protective and requires the government to clear a lower threshold, so in cases like this one involving records compiled for law enforcement purposes, courts generally focus on exemption 7(C). *See Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (recognizing that if the responsive documents were "compiled for law enforcement purposes" there is "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

The court first asks whether disclosure 'would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). Where "no significant privacy interest is implicated (and if no other Exemption applies), FOIA demands disclosure." *Horner*, 879 F.2d at 874. If there is a substantial privacy interest, the Court must "balance the . . . privacy interest against the public interest in disclosure." *Elec. Priv. Info. Ctr.*, 18 F.4th at 718 (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004)); *see Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("Exemption 7(C) requires the agency and the reviewing court to weigh the public interest in the release of information against the privacy interest in nondisclosure.").

The parties dispute the government's withholdings under these exemptions as to names and identifying information of (i) FBI personnel; (ii) third parties who provided information; (iii) third parties mentioned; (iv) persons of investigative interest; (v) non-FBI federal agency personnel; and (vi) local law enforcement personnel. *See* ECF No. 39-2 at 20. Khatchadourian challenges these withholdings based on evidence some of the individuals whose information has been withheld are deceased, provided privacy waivers, or are former law enforcement officials whose names have already been publicly disclosed in connection to Rose. Khatchadourian also argues the government did not adequately conduct its own assessment of whether individuals were living before asserting privacy interests on their behalf.

1. *The Government Has Not Satisfied Its Burden As To Individuals Who Have Been Proven Deceased Or Who Signed Privacy Waivers*

Khatchadourian challenges withholdings of the names and identifying information of individuals for whom Khatchadourian has provided proof of death or privacy waivers. As the D.C. Circuit has recognized, its cases "give strong support to Government decisions to withhold names

and identifying information from law enforcement records." *Schrecker*, 349 F.3d at 666 (collecting cases). Indeed, the Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Id.* (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991)). And it has recognized that "persons involved in law enforcement investigations—witnesses, informants, and the investigating agents—'have a substantial interest in seeing that their participation remains secret.'" *Id.* (quoting *Senate of the Commonwealth of Puerto Rico Judiciary Comm. v. U.S Dep't of Just.*, 823 F.2d 574, 588 (D.C. Cir. 1987)). This interest is "not materially diminish[ed]" by the "passage of time." *Id.* (collecting cases).

The Circuit has also advised, however, that the categorical rule allowing an agency to withhold information identifying private citizens mentioned in law enforcement records does not apply when people are deceased and therefore "the privacy interest in nondisclosure of identifying information may be diminished." *Id.* at 661. As the Circuit has instructed, "death clearly matters, as the deceased by definition cannot personally suffer the privacy-related injuries that may plague the living" and "[a] court balancing public interests in disclosure against privacy interests must therefore make a reasonable effort to account for the death of a person on whose behalf the FBI invokes exemption 7(C)." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 33 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999); *see also* ECF No. 27-3 at 29 (recognizing that "privacy concerns are typically obviated once an individual is deceased"). So too are privacy interests diminished in the case of a living person who has affirmatively waived their privacy interest. *See Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54, 66 (D.D.C. 2009) ("[P]ersonal privacy exemptions may be

overcome by a waiver signed by the third person whose privacy interest would be affected by the

disclosure." (citing *Milton v. U.S. Dep't of Just.*, 596 F. Supp. 2d 63, 65 (D.D.C. 2009))).

Here, Khatchadourian has submitted proofs of death and privacy waivers for individuals

connected to Rose and the FBI's related investigation. ECF No. 28-2 at 8. The government has not

rebutted Khatchadourian's proofs of death or waivers and, indeed, appears to concede there are no

privacy interests that would justify the withholding of names or identifying information for the

people identified in the proofs or waivers, claiming in its reply brief that it reprocessed and released

such information after Khatchadourian filed his cross-motion for summary judgment. ECF No. 39

at 2; ECF No. 39-2 at 12–13. The government also has not asserted or shown any foreseeable harm

would result from release of the names of these people. Although the government released more

records during briefing, Khatchadourian states in reply that the government continues to withhold

information for some individuals proven deceased. ECF No. 40 at 7. The Court grants summary

judgment to Khatchadourian as to the withholding of names or identifying information of people

for whom Khatchadourian has provided proof of death or privacy waivers.

>    2.   *The Government Has Also Not Shown It Has Taken Basic Steps To Ascertain Whether*
>         *It Is Withholding Identifying Information Of People Who Are Now Deceased*

Khatchadourian also challenges the government's withholding of names and identifying

information of people based on the government's failure to adequately ascertain whether they are

deceased, even if Khatchadourian has not specifically provided proof of their death.

The D.C. Circuit has instructed that, in evaluating withholding of identifying information

under exemption 7(C), "a court must assure itself that the Government has made a reasonable

effort to ascertain life status." *Schrecker*, 349 F.3d at 662; *see also Campbell*, 164 F.3d at 33 ("A

court balancing public interests in disclosure against privacy interests must . . . make a reasonable

effort to account for the death of a person on whose behalf the FBI invokes exemption 7(c).").

This is because "without confirmation that the Government took certain basic steps to ascertain whether an individual was dead or alive, [courts] are unable to say whether the Government reasonably balanced the interests in personal privacy against the public interest in release of the information at issue." *Schrecker*, 349 F.3d at 660 (citation omitted).

Here, the government has provided a declaration that describes the FBI's general protocol of applying a 100-year rule—under which a person is presumed dead if they were born more than 100 years ago—and of "us[ing] institutional knowledge gained from prior FOIA requests or internal records." ECF No. 27-3 at 29; *see also Schrecker*, 349 F.3d at 662–65 (upholding this approach as sufficient). But the government does not provide evidence confirming they applied these methods *in this case*, including what institutional knowledge, if any, it relied on. Further, Khatchadourian provides some evidence undermining the government's argument that it has made a reasonable effort to ascertain life status: the government withheld information about individuals for whom he provided proofs of death. ECF No. 28-2 at 8–9, 13; ECF No. 28-4 at 5–6. Although, as noted above, the government claims that it reprocessed and released the information of deceased individuals after Khatchadourian filed his cross-motion for summary judgment, Khatchadourian states that it has continued to withhold such information. ECF No. 40 at 7. Given the apparent discrepancies in the government's processing of the information, the government's failure to rebut or otherwise address Khatchadourian's arguments, and the lack of any description of what information the government consulted, the Court cannot "assure itself that the Government has made a reasonable effort to ascertain life status." *Schrecker*, 349 F.3d at 660.

The Court accordingly finds the government has not satisfied its burden to ascertain whether names and identifying information withheld pertained to deceased people and grants

summary judgment to Khatchadourian as to names and identifying information withheld under exemptions 6 and 7(C).

3. *The Government Has Not Satisfied Its Burden As To The Identity Of Individuals Whose Identities Are Publicly Known And Has Not Shown Foreseeable Harm Would Result From Releasing Identifying Information Of Any Law Enforcement Personnel*

Khatchadourian also argues the government has not satisfied its burden to show it is justified in withholding the names and identifying information of federal and local law enforcement agents and personnel because "the names of the government officials connected to the Rose investigation have long been public" and "it is well-established that [government officials] have a 'diminished privacy interest' in general." ECF No. 28-1 at 14 (quoting *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1092 (D.C. Cir. 2014)); *see* ECF No. 28-2 at 11.

The government does not dispute that publicly available information cannot be withheld under exemptions 6 and 7(C). Rather, as it stated for deceased individuals and individuals for whom privacy waivers were submitted, the government states that it has reprocessed and released names and identifying information in the public domain and withholds this information only for "government employees and other third-party individuals who are not publicly known to have been involved in the events described in these records." ECF No. 39 at 2; ECF No. 39-2 at 12. However, Khatchadourian states that the government has continued to withhold certain public information, including the names of two sources who testified or were mentioned at Rose's trial and one former FBI agent, Mat Perez, whose affiliation with the FBI became public through a lawsuit. ECF No. 40 at 7, 9. Indeed, Perez has revealed his role in the Rose investigation by filing a declaration in this suit. ECF No. 40-5. Given the government's concession that information publicly available may not be withheld under exemptions 6 and 7(C), the Court grants summary judgment to Khatchadourian on this issue.

As to remaining law enforcement whose names are not already public, the parties dispute whether the balance of private and public interests favor disclosure or nondisclosure. As to the private interest in nondisclosure, it is true public officials may have a lesser claim to privacy, but courts have recognized law enforcement officials "have a legitimate interest in preserving the secrecy of matters," including their identities, "that conceivably could subject them to annoyance or harassment in either their official or private lives." *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980); *see also, e.g.*, *Ball v. U.S. Marshals Serv.*, No. 19-cv-1230, 2021 WL 4860590, at *6 (D.D.C. Oct. 19, 2021) ("Courts have repeatedly found that it is proper to withhold names and other identifying information about law-enforcement officers and government officials under Exemption 7(C)."). The D.C. Circuit has recognized investigating agents "have a substantial interest in seeing that their participation remains secret" that is not materially diminished by the "passage of time." *Schrecker*, 349 F.3d at 666. At the same time, the Circuit has been clear that "[g]eneralities are not enough" in this context; rather, "showing that a substantial invasion of privacy will occur if the officer names are released requires 'reasonable specificity of detail rather than merely conclusory statements.'" *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 715 (D.C. Cir. 2025) (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015)).

As to the public interest, the interest in disclosure "must be evaluated in light of FOIA's central purpose: 'to open agency action to the light of public scrutiny.'" *Schrecker*, 349 F.3d at 661 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989)). At the same time, the focus must be "the incremental value of the specific information being withheld." *Id.* While Khatchadourian argues that the public has a general interest in how the FBI conducted "the first known example of a federal criminal investigation of an individual who planned to destroy property for the purpose of animal protection," he does not make a compelling

case for the importance to the public of knowing the names of individual law enforcement personnel (and, more specifically, the ones who are not already public). ECF No. 28-1 at 17.

The Court need not resolve the parties' dispute, however, because even if the information falls within exemption 6 or 7(C), the government has not met its additional burden of showing release would result in foreseeable harm. The government provides a generalized declaration that it is "possible for a person targeted by law enforcement action to carry a grudge which may last for years," and a person "may carry a grudge against those involved with the investigation." ECF No. 39-2 at 25, 29. But the D.C. Circuit has been clear that a declaration like the one here that speaks only in generalities and fails to identify any specific harm is insufficient. *See Hum. Rts. Def. Ctr.*, 126 F.4th at 716–17 (reversing a district court's conclusion that exemption 6 justified withholding because an agency's "speculative or abstract fears . . . do not establish a foreseeable harm sufficient to justify withholding the officer names at issue"). Such generalized statements are especially wanting here, where many of those involved in the original scheme, including Rose himself, are deceased. The government has accordingly failed to meet its burden to show foreseeable harm from disclosure of this identifying information, and the Court grants summary judgment to Khatchadourian on this issue.

### B.  The Government Satisfied Its Burden In Part As To Exemption 7(D)

The government moves for summary judgment as to its withholdings under exemption 7(D), which applies to "records or information compiled for law enforcement purposes" when they "could reasonably be expected to disclose the identity of a confidential source" or "information furnished" by such a source. 5 U.S.C. § 552(b)(7)(D). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quotation marks and citation omitted). "The agency invoking

Exemption 7(D) bears the burden of proving that it applies, and with respect to the FBI, it is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth*, 642 F.3d at 1184. The FBI must instead "'point to more narrowly defined circumstances that . . . support the inference' of confidentiality." *Id.* (quoting *U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 179 (1993)).

The government states it has "withheld names, identifying information of, and information provided by persons under an implied or express assurance of confidentiality" as well as "a foreign government agency's information provided under both an implied and express assurance of confidentiality, and that foreign government's identity." ECF No. 27-1 at 25; *see* ECF No. 27-3 at 40–45. Khatchadourian challenges the withholding of identifying information and information provided by individual informants and foreign governments in the case of both express and implied assurances of confidentiality.

### 1. The Government Has Not Satisfied Its Burden Under Exemption 7(D) As To Informants Publicly Connected To The Rose Investigation

Khatchadourian argues that some individual informants and foreign governments involved in the Rose investigation, as well as the information they provided, have already been publicly disclosed. For example, Khatchadourian argues that the identity of and information testified to by informant Burt Caratelli, "the FBI's chief witness" in Rose's trial, cannot be withheld under exemption 7(D) because they were already publicly known. ECF No. 28-1 at 16; ECF No. 28-2 at 7. Khatchadourian argues that the involvement of foreign governments has also been disclosed, citing various documents that reference the involvement of Mexico, the Bahamas, and Argentina. ECF No. 40 at 22; ECF No. 28-2 at 13.

When a confidential source has testified at trial, the government cannot withhold the information "to which the source actually testified." *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276,

1281 (D.C. Cir. 1992). And under the public-domain doctrine, "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). The government appears to concede that exemption 7(D) does not cover confidential sources or information furnished by them that has already been made public. *See* ECF No. 39 at 1–2 (representing that, after reprocessing records following Khatchadourian's cross-motion for summary judgment, the government withholds only records that contain non-public information); ECF No. 39-2 at 12–13. The government has represented, for instance, that it "no longer asserts Exemption 7(D) for information regarding Burt Caratelli and publicly known aspects of his cooperation." *Id.* at 6. But Khatchadourian attests that the government has continued to redact the names of known sources, including Caratelli's, despite its representations following reprocessing. ECF No. 40-1 at 2 (attesting that "Defendants have not lifted a single redaction to Burt Caratelli's identity during their September 2024 re-processing"). The Court accordingly grants summary judgment to Khatchadourian as to any withholding under exemption 7(D) pertaining to the identification of a confidential source or government, or information from a source or government, that has already been made public.

   2. *The Government Has Satisfied Its Burden As To Informants And Foreign Governments With Express Assurances Of Confidentiality, But Has Not Satisfied Its Burden To Show Implied Assurances*

   The government moves for summary judgment as to withholdings under exemption 7(D) based on express assurances of confidentiality to individual informants and foreign governments, as well as assurances it says would have been implied. The government has met its burden as to the former, but not the latter.

   When the government "contends that a source received an express assurance of confidentiality, it must, in order to 'permit meaningful judicial review,' present sufficient evidence

that such an assurance was in fact given." *Roth*, 642 F.3d at 1184 (quoting *Campbell*, 164 F.3d at 34). This evidence "can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Campbell*, 164 F.3d at 34.

Here, the government has provided a declaration describing the process it undertook in this case for identifying express confidentiality arrangements with informants. *See* ECF No. 39-2 at 33–34. That included the identification of positive indicators and "source file numbers and/or source symbol numbers" establishing that the individual worked under an express grant of confidentiality. *Id.* The government represents that, in reviewing the records in this case for these things, it "was able to determine its investigators granted certain individuals within the records at issue express assurances of confidentiality." *Id.* at 33. As to foreign governments, the government attests its withholdings rely on "agreements with foreign governments under which national security and/or criminal law enforcement information is exchanged" and which "specify the extent of confidentiality requested by the respective foreign authorities." *Id.* at 35.

These showings are sufficient to meet the government's burden to show that it gave express assurances of confidentiality. *See Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (holding the government was entitled to summary judgment when it attested that withheld documents were marked with notations "indicating that [the] source received an express assurance of confidentiality"). And Khatchadourian does not give a persuasive reason to doubt that the government's described process would reliably identify informants and governments that had express confidentiality assurances in this case. The Court accordingly concludes the government provided sufficient evidence that it gave express confidentiality assurances.

The Court also concludes the government has shown foreseeable harm if it were to violate express confidentiality assurances. As the government's declarant explains, releasing the identities of and singular information provided by individuals who are expressly assured such information will not be disclosed may not only "lead to the revelation of their identities" but would also "display unwillingness by the FBI to honor its assurances of confidentiality to current and future" confidential sources and thereby "hinder the FBI's ability to recruit and maintain [confidential sources] willing to provide accurate and relevant information pertaining to criminal activities." ECF No. 39-2 at 33; *see Clemente v. FBI*, No. 20-cv-1527, 2022 WL 17092585, at *8 (D.D.C. Nov. 21, 2022) (finding foreseeable harm was shown where the FBI explained releasing information provided under express assurances of confidentiality would "caus[e] great detriment to the FBI's ability to recruit and maintain reliable confidential sources" (quotation marks omitted)). This concern about trust and credibility applies equally to foreign governments, as it is "only through this confidence that a foreign government agency can be persuaded to continue providing valuable assistance in the future" and unanticipated disclosure "would negatively affect the FBI's ability to obtain information quickly and discreetly in future law enforcement investigations." ECF No. 39-2 at 35; *see Project for Priv. & Surveillance Accountability, Inc. v. U.S. Dep't of Just.*, No. 21-cv-2362, 2024 WL 2864191, at *10 (D.D.C. June 6, 2024) (finding foreseeable harm was shown where the FBI attested "revealing the identity of a foreign source would seriously impair the FBI's effectiveness in assisting with or participating in future investigations with foreign government agencies" (quotation marks omitted)).

Finally, the government has shown it reasonably segregated information that can be disclosed from the information withheld pursuant to express assurances of confidentiality under this exemption. FOIA requires that "[a]ny reasonably segregable portion of a record shall be

provided to any person requesting such record after deletion of the portions which are exempt." 5
U.S.C. § 552(b). "In order to demonstrate that all reasonably segregable material has been released,
the agency must provide a 'detailed justification' for its non-segregability." *Johnson v. Exec. Off.
for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. Dep't of Air
Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). Here, the government has met this requirement by
providing a declaration attesting that the government conducted "a line-by-line review" of the
withheld documents to "ensure that all publicly available information was properly released" and
by providing a *Vaughn* index describing each record withheld and the applicable exemption(s).
ECF No. 39-2 at 12; ECF No. 39-3 at 120–50; *see Ecological Rts. Found. v. U.S. Env't Prot.
Agency*, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) ("Affidavits attesting to the agency's 'line-by-line
review of each document withheld in full' and the agency's determination 'that no documents
contained releasable information which could be reasonably segregated from the nonreleasable
portions,' in conjunction with a *Vaughn* index describing the withheld record, suffice [to meet the
segregability requirement]." (quoting *Johnson*, 310 F.3d at 776)).

On the other hand, the government has not met its burden to show implied confidentiality
assurances. Courts consider several factors to determine whether communications were implicitly
confidential, including "'the character of the crime at issue,' 'the source's relation to the crime,'
whether the source received payment, and whether the source has an 'ongoing relationship' with
the law enforcement agency and typically communicates with the agency 'only at locations and
under conditions which assure the contact will not be noticed.'" *Roth*, 642 F.3d at 1184 (quoting
*Landano*, 508 U.S. at 179). With respect to individual informants whose identities and information
has been withheld on this basis, the government addresses the first factor, the character of the
crime, but provides conclusory assertions as to the second, suggesting the relevant individuals

"were within the orbit of suspected criminals" and "in a position to have ready access to and/or knowledge about investigative targets and others involved in the trafficking of explosive devices and the planning of their use." ECF No. 39-2 at 32. And the government does not address or respond to Khatchadourian's arguments on the third and fourth factors—in other words, the government provides no information about whether the informants were paid or about the relationship between the informants and law enforcement from which the Court could infer an assurance of confidentiality. The government has accordingly failed to justify these withholdings. *See Sennett v. U.S. Dep't of Just.*, 962 F. Supp. 2d 270, 286 (D.D.C. 2013) (concluding the court "cannot sanction the withholdings under Exemption 7(D)" where "the FBI has explained the character of the crime at issue" but "has not provided any information on the other *Roth* factors").

The government's showing as to implied confidentiality assurances to foreign governments is similarly deficient. The government filed a declaration with general statements, such as that "[u]nder most circumstances, [foreign] agencies expect the FBI will not disclose information or parts of investigations" and that it is "reasonable for the FBI to infer that foreign government agencies would not share information without an expectation of confidentiality." ECF No. 39-2 at 35–36. But caselaw clearly requires more, including a specific factual showing—not conclusory statements. *See Roth*, 642 F.3d at 1184 (explaining it is "not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis" and it must instead "'point to more narrowly defined circumstances that . . . support the inference' of confidentiality" (quoting *Landano*, 508 U.S. at 172)); *Stein v. U.S. Dep't of Just.*, 134 F. Supp. 3d 457, 485–86 (D.D.C. 2015) (concluding the FBI failed to show implied assurances to foreign governments based on "vague generalities" virtually identical to those here).

The Court accordingly grants summary judgment to the government as to withholdings based on express assurances to informants and foreign governments, and to Khatchadourian as to any withholdings based on the assertion of implied assurances.

### C.  The Government Has Not Met Its Burden Under Exemption 7(E)

The government moves for summary judgment as to its withholdings under exemption 7(E), which covers "records or information compiled for law enforcement purposes" where they "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) sets a relatively low bar for agencies; they need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). But agencies still must "provide a 'relatively detailed justification' for each record that permits the reviewing court to make a meaningful assessment of the redactions and to understand how disclosure would create a reasonably expected risk of circumvention of the law." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 246 (D.D.C. 2013) (quoting *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012)).

The parties dispute the government's withholdings under this exemption as to methods used to collect and analyze information; surveillance techniques; and non-public cooperation with foreign governments and other government agencies. ECF No. 28-1 at 31; ECF No. 40 at 2. As Khatchadourian points out, the government's declaration offers the type of vague and conclusory assertions that courts routinely deem insufficient even under exemption 7(E)'s low bar. *See* ECF No. 40 at 19–23. For example, as to the "collection and analysis of information," the government's declarant simply states that "release of this information would disclose the identity of methods

used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected" and that "[s]uch disclosures would enable subjects of FBI investigations to circumvent similar currently used techniques." ECF No. 39-2 at 37. These assertions are so general that they could apply to anything the FBI does and they do not provide the Court any meaningful way to assess the application of exemption 7(E).

The government's proffer regarding its other categories is equally vague and conclusory. *See* ECF No. 39-2 at 38 (asserting the government withheld "information concerning the targets, locations, monitoring, and types of devices utilized in surveillance operations conducted by the FBI in relation to the investigation at issue here" because "disclosure of non-public details about who, when, how, and under what circumstances the FBI conducts surveillance would allow current and future subjects of FBI investigations and other potential criminals to develop and utilize countermeasures to defeat or avoid different types of surveillance operations"); *id.* at 39 (asserting generally that disclosure of coordination with foreign government agencies "would reveal non-public FBI techniques by revealing coordination, or a lack of coordination, between a specific foreign government and the FBI in a particular matter" and "disclose the types of information the FBI is able to obtain from the specific foreign partners and the types of cases it chooses to coordinate with the foreign partners"); *id.* at 40 (asserting the government withheld information about coordination with other government agencies because "[r]evealing this information would reveal the FBI located information on the subject matter relevant to the investigative purview of [other agencies]" and "which types of investigative data the FBI deems relevant enough to refer to or collaborate with certain [other agencies] for further investigation").

The government declarant's statements are insufficient because they provide only "generic portrayals of categories of documents and vaguely formulated descriptions" with no specific facts or context that would allow the Court to deduce any information about the specific techniques at issue. *Am. Immigr. Council*, 950 F. Supp. 2d at 246; *see also Dent v. Exec. Off. for U.S. Att'ys*, 926 F. Supp. 2d 257, 272 (D.D.C. 2013) (holding withholdings under exemption 7(E) were improper where the government attested that it withheld "'procedures and techniques used by FBI agents to conduct criminal investigations,' the disclosure of which 'could enable subjects of FBI investigations to circumvent similar currently used techniques and procedures by law enforcement'"). Khatchadourian is accordingly granted summary judgment as to these withholdings.

### D.  The Government Has Satisfied Its Burden As To Exemption 7(F)

The government moves for summary judgment as to withholdings under exemption 7(F), which covers information compiled for law enforcement purposes that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

Khatchadourian does not appear to dispute the application of exemption 7(F) to the identities of particular Marshals and Drug Enforcement Administration personnel, but notes that the government's argument relies on unsigned affidavits. *See* ECF No. 28-1 at 2 n.1. Because the unsigned affidavits do not "set out facts that would be admissible in evidence," the government's motion is denied without prejudice as to these records. Fed. R. Civ. P. 56(c)(4).

Khatchadourian separately disputes the government's withholdings under this exemption as to non-public details about the explosives Rose had or planned to use. The government states it "withheld specific details concerning the explosives James R. Rose, Jr. possessed and planned to use, including: the specific type and volume of components and materials required; how the device could be assembled, utilized, and/or operated; detailed handwritten notes collected as evidence

concerning the design, assembly, and makeup of the explosives and their capabilities; details concerning the procedures and results of forensic examination of the explosives; detailed photographs of the particular explosives, the forensic examination of the explosives, and their eventual detonation and destruction." ECF No. 39-2 at 42.

Khatchadourian's principal argument is that the government presented much of this information in public at Rose's trial. Khatchadourian cites documents indicating the government detailed the explosives Rose had and planned to use, as well as testimony and descriptions of counsel at the trial about the particular forms of explosives Rose had or planned to use. ECF No. 28-1 at 39–41. Khatchadourian argues both that the presentation of this information at trial undermines the government's concern disclosure would "reasonably be expected to endanger the life or physical safety of any individual" and that information in the public domain is not subject to withholding. *See Cottone*, 193 F.3d at 554 (explaining that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record"). The government appears to concede that information presented at trial cannot be withheld, stating that it has released the information about the explosive devices that was revealed during Rose's trial "to the best of its ability, when not intertwined with other exempt information." ECF No. 39-2 at 43. However, the government does not address the examples Khatchadourian gives of documents that have been redacted even though they were presented at trial. *See, e.g.*, ECF No. 40 at 24 ("'photographs of destruction of explosives' . . . were exhibits filed in Rose's case by Defendant DOJ" that "Defendants are still withholding in full" (quoting ECF No. 28-4 at 58)).

Given that the government's withholdings have been "called into question by contradictory evidence in the record," it cannot be granted summary judgment. *Jud. Watch*, 726 F.3d at 215

(quoting *Consumer Fed'n*, 455 F.3d at 287). And Khatchadourian is entitled to summary judgment as to information the government has withheld about the explosives Rose had or planned to use that was presented at trial and therefore not covered by exemption 7(F).

### E.  The Government Has Satisfied Its Burden As To Its *Glomar* Response

In some FOIA cases, "merely acknowledging the existence of responsive records would itself 'cause harm cognizable under [a] FOIA exception.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (alteration in original) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). "In that event, an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive documents," but only if "the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Id.* (quoting *Wolf*, 473 F.3d at 374). A plaintiff "can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013).[2]

Here, the government issued *Glomar* responses as to "unacknowledged records in four categories: (a) national security or foreign intelligence records, which are withheld under Exemptions 1 and 3 and 50 U.S.C. § 3024(i)(1); (b) records identifying individuals in the Witness Security Program under Exemption 3 and 18 U.S.C. § 3521; (c) records identifying individuals on a watchlist under Exemption 7(E); and (d) records whose release could reasonably be expected to endanger the life or safety of a confidential human source under Exemptions 7(D), 7(E), and 7(F)."

---

[2]    The *Glomar* response gets its name from a case where the Central Intelligence Agency refused to confirm or deny it had records about the activities of a ship called the *Hughes Glomar Explorer*. *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

ECF No. 27-1 at 39–40; *see* ECF No. 27-3 at 60–62. The government incorporated the standard justification for these *Glomar* responses. ECF No. 27-4 at 216–33.

Khatchadourian does not challenge the government's *Glomar* responses. Accordingly, as to the *Glomar* responses, the government's factual assertions are deemed admitted and its unopposed legal arguments conceded. In consideration of the government's uncontested declaration and standard *Glomar* responses, summary judgment is awarded to the government.

## III.    Conclusion

For these reasons, the government's motion for summary judgment, ECF No. 27, is granted in part and denied in part and Khatchadourian's cross-motion for partial summary judgment, ECF No. 28, is granted in part and denied in part. The parties shall meet, confer, and file a joint status report by October 14, 2025, proposing a schedule for next steps consistent with this opinion.

_____

AMIR H. ALI
United States District Judge

Date:    September 29, 2025